## Koch & Co. v. Merk.

1. *Pleading—General Issue—Breach of Contract—Recoupment.*— When the defense to a suit is in the nature of a cross-action, the cause of which is damages sustained by a breach of an express agreement, the defendant, upon proper proof, may recoup general damages under a plea of the general issue as well as under a special plea.

2. *Pleading—Nil Debet.*—A plea of *nil debet* to a declaration in assumpsit on the common counts, being inappropriate, is a nullity, even in debts upon a simple contract. A set-off could not be proved under it without notice.

3. *Recoupment of Special Damages.*—Special damages can not be recovered or recouped unless they are specially set forth in appropriate pleas, or as a defense, come within the scope of the general issue.

4. *Damages—Special Damages—When Speculative, etc.*—Special damages, which are merely speculative, like probable profits, or not within the contemplation of the parties at the time of the contract, or not ascertainable with reasonable certainty by the usual rules of evidence, can not be recovered.

5. *Variance—Pleadings and Proofs.*—Evidence of an agreement to ship as soon as possible or within a reasonable time will not support an averment of an agreement to ship in two days.

Memorandum.—Action of assumpsit. Appeal by the plaintiffs from a judgment in their favor for $39.50, rendered by the Circuit Court of Montgomery County; the Hon. JACOB FOUKE, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1890, and affirmed. Upon a rehearing at the May term, A. D. 1891, it was reversed. Opinion filed January 30, 1893.

The opinion states the case.

### APPELLANTS' BRIEF.

The true measure of damages where there has been a failure to deliver goods, is the difference between the contract

price and the market value of the article at the time and place fixed by the contract for delivery. If such articles can not be had in the market where, by the contract, they were to have been delivered, they may be bought, in the nearest market, and the additional costs of getting them there will be the cost in the market where they were to be delivered. Capen v. De Steiger Glass Co., 105 Ill. 185.

Under this rule, the damages in this case being special, no recovery for damages can be allowed unless the appellant contracted with appellee with special reference thereto. C., B. & Q. R. R. Co. v. Hale, 83 Ill. 360.

Appellee is not entitled to damages for his loss of time, the money paid his traveling salesman, and money expended for rent, etc. C. J. L. Myers & SonsCo. v. Davis, 17 Brad. 228; Fessler v. Love, 48 Penna. 407–410; Benjamin on Sales, pp. 1122, 1129 and 1135.

The measure of damages for failure to fulfill a contract can not be fixed by the loss occasioned to the other party from his own consequent failure to supply lumber therefrom, under a contract subsequently made with other parties, the first contract not having been made on the strength of the second. Westmore v. Pattison, 45 Mich. 439.

LANE & COOPER, attorneys for appellants.

### APPELLEE'S BRIEF.

If the appellants failed to ship the goods in time and the appellee sustained damages, and there is no dispute that he did, he had a perfect right to retain in his own hands enough to liquidate such damages. Drennan v. Bunn, 124 Ill. 175 ; Carpenter v. First Nat. Bk., 119 Ill. 352, 360; West Union R. R. Co. v. Smith, 75 Ill. 497; Waterman on Set-off and Recoupment, 466, § 416; p. 469, § 422; p. 592, § 530; Citing Naylor v. Schenck, 3 E. D. Smith, 133; *Id.*, p. 596, § 552; p. 662, § 617.

One witness, if sustained by corroborating facts and circumstances proved, may overcome two. That is this case and the court has properly refused the holdings. C., B. &

Q. R. R. v. Dickson, 63 Ill. 151; Totel v. Bonnefoy, 23 Ill. App. 55; Shevalier v. Seager, 121 Ill. 564.

McWILLIAMS & SON, attorneys for appellee.

BROWN, WHEELER & BROWN, of counsel.

OPINION OF THE COURT, *the Hon. George W. Pleasants, Judge.*

In April, 1884, appellants, manufacturers at Elberfeld, Germany, sold to appellee, a watchmaker, a bill of goods consisting of tools and materials for making watches, and amounting to $1,214, of which he then paid $750, and other parcels afterward, reducing the balance to $39.50. These goods he immediately took to Memphis, Tennessee, and there commenced business.

On the 22d of April, 1885, he ordered another bill of like kind, amounting to $1,582.73. On this purchase he has never made any payment, though he took with him a portion of the goods, priced at $766.48, leaving the residue to be shipped to him at his expense and risk, and which were so shipped on the 17th of June. They arrived at New York by the 30th, but did not reach Memphis until about the 17th of August. Appellee then refusing to receive them, they were re-shipped to New York by direction of appellants, and there sold for their account for $824.42, which was credited to appellee and exceeded the amount at which they were sold and charged to him by $8.17.

This action was brought in August, 1888, to recover the balance due on the purchase of 1884, the amount of the bill bought in 1885 (less the proceeds of the re-sale in New York) and $240.85 paid by appellants for consular fees at Elberfeld, custom house dues at New York, insurance at sea, freight and carriage, amounting in all to $1,038.68. The declaration was in assumpsit, on the common counts, with another to cover the cost of the reshipment to New York. An itemized statement of the account sued on, showing this balance, was filed with it. The pleas were *nil debet,* and a

Koch & Co. v. Merk.

special plea averring that plaintiff agreed to ship the goods specified in the last invoice in one or two days from the date of the order, but failed to do so, whereby he sustained special damages exceeding the amount of their claim.    These damages, as therein set forth were (1) " for delay and loss of time, $1,000;" (2) "in expenses in placing said goods by selling on orders and being unable to deliver the same, $1,000;" (3) " in general disappointment in business $500;" (4) "in store rent $105."

The court below, trying the cause without a jury, found for the plaintiffs and assessed their damages at $39.50—the exact amount of the balance remaining unpaid on the purchase of 1884, overruled their motion for a new trial and rendered judgment upon the finding; to which exception was duly taken.    On appeal to this court that judgment was affirmed; but a rehearing was granted, further argument has been submitted, and the case again considered.

It was proved and formally agreed on the trial that plaintiff's statement of the account, filed with the declaration, was true in fact.    The issues were then confined to the averments of the special plea, as to which the burden of proof was upon the defendant.    Under that plea he sought to recoup damages alleged to have arisen out of the purchase of 1885.    However much these may have exceeded the amount of plaintiff's demand on account of that purchase, they could be applied no further than to extinguish it.    No excess could be recovered, nor could it be set off against their claim on account of any other transaction.    Stow v. Garwood, 14 Ill. 424, and later cases too familiar to require special reference.    The plea, then, though purporting to answer the whole declaration, presented no legal defense to the claim for the balance remaining unpaid on the purchase of 1884; and plaintiffs were entitled at least to the judgment they obtained for the amount of that balance.    But the court below found that as against the damages caused by their delay in the shipment of the goods, specified in the last invoice, they were entitled to no more; and this court affirmed its judgment on two grounds stated.    First, that

the questions involved were questions of fact determined upon a conflict of evidence, and second, that the proof furnished no basis on which plaintiffs' damages, by reason of defendant's refusal to receive and pay for those goods, could be ascertained. This last proposition was based upon the holding that plaintiffs were bound, if they resold the goods elsewhere than at Memphis, to show affirmatively that it was a better market; that they did not so show, and therefore it did not appear that if they had been resold in Memphis they would not have brought more than they did in New York.

Upon reconsideration we are constrained to think that too much deference was paid to the finding, as such, and that it was not sufficiently supported by a proper kind or amount of evidence.

The questions of fact were, what was the agreement, if any, as to the time when or within which the goods were to be shipped; were plaintiffs negligent in respect to the shipment, and if so what damage was thereby caused to defendant?

The plea averred an express agreement to ship them in one or two days from the date of the order, and not later. No evidence was offered to prove it except the testimony of defendant. His positive statement was: "They were to be shipped in two days; that was the agreement." We find no circumstance shown which at all tends to corroborate it. It is discredited and contradicted by his own statement, in a letter to plaintiffs of June 11th, that "Promised was tendered me that the goods at least in fourteen days would be shipped." This letter, as it appears in the record, shows that he is a poor writer, or had a poor translator, or that it was inaccurately copied. For want of punctuation and capital letters, the beginnings and endings of clauses and sentences are in many instances left uncertain, and inapt words to be understood by the context. Counsel suggest that he intended to say he was promised that in fourteen days the goods would *arrive*. We think the suggestion unreasonble on its face. Neither of the parties could have supposed that goods could be freighted from Elberfeld to Memphis, pass-

ing the custom house in New York, in twelve days. It is also clearly forbidden by the context. He commences the letter by saying, "Since three weeks I expected daily to hear from you if and when my goods was sent." Three weeks from June 11th would be May 21st, and a letter to be then received must have been mailed from twelve to fifteen days previously, or about fourteen days from April 22d, the date of the order and alleged promise. Again, immediately following the statement of the promise above quoted, he says: "Therefore I rented an office and took Mr. Charles Rauch on the first day of July," evidently meaning not *on* that day, then long future, but *from* it. Had he understood the goods were to be shipped by the 24th of April and arrive in fourteen days, or within a month thereafter, we should suppose he would have arranged for an office and traveling man, if he wanted them, for a much earlier day than July 1st. There is, then, no escape from the fact that his statement as a witness is clearly and materially inconsistent with his letter written before this litigation arose. Therefore, without being further discredited, it would not be satisfactory proof of his plea.

But it was also contradicted flatly by each of the plaintiffs, in the deliberate form of a deposition. They swear that there was no such agreement. Fritz Koch states that the larger and heavier part of the goods ordered were not then in stock, but had to be manufactured; that they did not know how soon they could be, and that defendant was so informed at the time; and that for that reason they could not and did not indicate any definite time within which they would be shipped, but only promised to ship them as soon as possible—that is, as we understand, not literally, but reasonably possible—in other words, within a reasonable time under the circumstances; which is no more than the law would imply in the absence of an express agreement. Appellants were doing a very large business as manufacturers of such goods—"a million business," as appellee himself expressed it. It is not to be supposed that other contracts or orders previously made or received would be postponed

or neglected, or the regular course of operation in the factory departed from, to fill this. Albrecht Koch testified to the same effect, as to the agreement and the reason for it. This testimony was not contradicted by any circumstance or other evidence except the statement of appellee. They appear to be quite as intelligent and unbiased and to have had as full means of knowledge as he. The court below did not see or hear them. So far as can be judged from the record, they were for every reason at least as credible and reliable as he; and if they were, being two to one, it is as true and certain as the mathematics that on this issue the preponderance of the evidence was with them.

The defense here was of the nature of a cross-action, the cause of which, as stated, was damages sustained by breach of an express agreement. We understand that in an action like this the defendant, upon proper proof, may recoup general damages under the general issue as well as under a special plea. Cooke v. Preble, 80 Ill. 381, and cases there cited.

But here there was no general issue. The plea of *nil debet*, being inappropriate, was a nullity. 1 Chitty on Pl., 521. Even in debt on simple contract, a set-off could not be proved under it, without notice. Stephen on Pl., 173, note *p*. (3d Am. Ed.) And the damages sought to be recouped were of the kind known as special, that is, not the necessary, though they may have been the natural consequence of the delay complained of; and such are not recoverable in any way unless especially alleged. C. J. L. Myers & Sons Co. v. Davis, 17 Brad. 228, and authorities there cited. Then the defense here intended could be made only under the special plea; for there only were they so alleged. Its foundation was the alleged agreement. If that was not proved substantially as laid, the defense necessarily failed, whatever may have been shown as to the breach of some other duty or agreement and resulting damages. Evidence of an agreement to ship as soon as possible or within a reasonable time will not support an averment of an agreement to ship in two days.

We think it unnecessary, with reference to another trial, and might be hurtful, to consider whether the evidence showed any unreasonable delay; but something should be said on the subject of damages, in relation to which the finding seems to us to be also unsupported by proper proof.

The testimony of Mr. Rauch, the appellee's traveling man, was simply worthless, because he only stated his opinion that appellee was damaged by the delay, and how, but not to what amount, nor any data from which it could be estimated even approximately. Appellee's statement was as follows: "If shipped according to contract the goods would have arrived at Memphis the 12th or 15th of May. There was three months delay. I lost forty per cent on the goods. I furnished a store, paid rent and for books and printing. I lost $300 on that. I count my time at $80 a month for five months, $400. The most I lost besides that was when the traveling man was on the road. It cost $350."

We do not see that this statement is at all improved by any other. It may therefore be taken as the presentation of appellee's entire case on this question. There was no other witness on his part.

From the testimony of both we understand that the alleged loss of forty per cent on the goods he brought with him is attributed to the fact that they did not constitute complete sets of tools or materials, but were supplemented by those to be shipped, and consequently, on sales made or orders received for complete sets, he was unable to deliver them. To what extent this was so was not stated. He made some sales and realized some profits thereon before June 11th; for in his letter of that date he says: "Till yet we have very little business; about $48 profits." He testified that about the 20th of August he took what stock he then had to St. Louis, where he tried to sell it for cost, and disposed of it in about three months; but fails to state what it brought, or whether more or less than cost. It has been seen that he rented an office and employed a traveling man from the 1st of July. This man he recalled and discharged within a month, because he could not fill the orders sent in

by him. But it also appears that the place of delivery of
the goods to be shipped was Elberfeld, and their transporta-
tion was at the risk of appellee; that they were delivered
there on the 17th of June, and were in New York by the
30th. Appellee says they laid there a month, but he under-
estimates the time. Had he attended to them as he ought,
they would have been in Memphis in time to fill promptly
every order obtained by Rauch. In this evidence, then,
there is no basis upon which to ascertain, or to estimate
approximately, how much of this loss, if any, was due to
the delay in shipping or any negligence of appellants, rather
than to that of appellee.

It also appears that when he made this purchase of 1885,
he had been in the same business with the same kind of
stock and at the same place for nearly a year, as was known
to appellants; from which it must be presumed that he
already had such a place, with such furniture, books, adver-
tisements and assistants as he thought were suitable and he
could afford, for carrying on that business. Appellants
therefore could have had no reason to suppose, when these
goods were ordered, that any such expenses would be in-
curred by appellee, with special reference to them. And if
they had, the evidence fails for the reason above stated, to
show how much of it is chargeable, as loss, to their negli-
gence, rather than to his.

While it is probable the goods were intended for sale, it
was shown that appellee was a practical watchmaker and
repairer. Whether the business as previously carried on in-
cluded his work as a mechanic does not appear; nor whether
it was intended to be so carried on after the purchase of
1885. But his estimate of the value of his time—$80 a
month—which would be reasonable enough if it refers to
what he could earn as a mechanic, is purely speculative and
conjectural, depending upon the question and amount of
profits, if to his time as a merchant; and whether to one or
both, the delay in shipping was not five months. Accord-
ing to the evidence, conceding his contention as to the agree-
ment, it was less than two, according to his letter, still less,

and according to the statement of appellants, none at all. Whatever it may have been his letter shows it was not wholly lost to him as a merchant, and no reason is perceived why he should have lost a single day by enforced idleness as a mechanic, for the stock still on hand, with what he brought home of the last purchase, must have furnished abundant material for work in that character for two months.

How much did he lose " when the traveling man was on the road ? " He says it " cost " $350; for both salary and expenses, we presume. Were his labors wholly unproductive ? Were any orders he obtained filled ? How many did he obtain, and for what amount ? If none were filled, whose negligence prevented ? When did he go on the road ? When was his first order sent in ? Might not the goods with proper attention by appellee have been forwarded from New York and reached Memphis before it was received ? Upon all of these obvious and pertinent questions the record is silent.

It has already been observed, upon authorities cited, that special damages can not be recovered or recouped unless they are specially set forth; and we may now add, nor then, if they are merely speculative, like probable profits (Greene v. Williams, 45 Ill. 209; Benton v. Fay & Co. 64 *Id.* 422) or were not within the contemplation of the parties when the agreement was made (Goodkind v. Ragan, 8 App. 413; Benton v. Fay & Co. *supra*), or not ascertainable with reasonable certainty by the usual rules of evidence. Hair v. Barnes, 26 App. 580, and cases there cited.

Upon the facts above stated we think neither of the four items of damage alleged in the plea can stand these tests of admissibility. Each clearly seems to be either purely speculative, or not presumably within the contemplation of the parties when the agreement to ship was made, or too uncertain both as to the amount, if any, and to the cause of it. The one most clearly susceptible of satisfactory proof is the last, being " to damages in store rent, $105 "—but we find no particle of evidence in the record to warrant the presumption that appellants, on the 22d of

April, 1885, had the slightest reason to suppose appellee intended to rent a store for these goods. Besides, his rent was to commence from July 1st, when they had passed the custom house in New York. It was due to his neglect and not to theirs that they remained in New York for a single day thereafter. For how much time lost is this $105 charged? And what basis is furnished for ascertaining with reasonable certainty, or approximately, what the damage on this account would have been if he had properly seen to the forwarding of the goods?

For the reason that the finding appears to us to have been without sufficient support from the evidence and to have done substantial injustice, the judgment will be reversed and the cause remanded.